1          UNITED STATES DISTRICT COURT
           CENTRAL DISTRICT OF ILLINOIS
2              URBANA DIVISION

3  **UNITED STATES OF AMERICA,**  )
                                  )  **Case Number 18-20060**
4                  Plaintiff,     )
                                  )
5          vs.                    )
                                  )  December 2, 2020
6                                 )  2:30 p.m.
   **EDWARD WOODFORK,**           )
7                                 )
                   Defendant.     )
8

9              <u>**SENTENCING HEARING**</u>

10     **BEFORE THE HONORABLE MICHAEL M. MIHM**
          Senior United States District Judge
11

12  <u>A P P E A R A N C E S</u> :

13  For the Plaintiff:  **BRYAN DAVID FRERES, ESQUIRE**
                        Assistant United States Attorney
14                      201 South Vine Street
                        Urbana, Illinois 61802
15                      217-373-5875
                        bryan.freres@usdoj.gov
16

17  For the Defendant:  **JOHANES CHRISTIAN MALIZA, ESQUIRE**
                        Assistant Federal Public Defender
18                      600 East Adams Street, 2nd Floor
                        Springfield, Illinois 62701
19                      217-492-5070
                        johanes_maliza@fd.org
20

21

22  Court Reporter:     LISA KNIGHT COSIMINI, RMR-CRR
                        U.S. District Court
23                      201 South Vine
                        Urbana, Illinois 61802
24
    Proceedings recorded by mechanical stenography;
25  transcript produced by computer.

```
 1                    (In virtual courtroom, 2:30 p.m.)
 2              THE COURT:  So this is the case of United
 3    States of America versus Edward Woodfork, Criminal
 4    Number 18-20060.
 5              The defendant is participating by video
 6    conference, represented by his attorney, Johanes
 7    Maliza.
 8              The United States is represented by Bryan
 9    Freres.
10              The matter is set today for a sentencing.
11    The defendant previously entered a plea of guilty to
12    two counts of an indictment charging possession of
13    methamphetamine with intent to distribute and
14    possession of a firearm by a felon.
15              This sentencing would normally occur in
16    open court; but because of the virus, it's not
17    possible to do that right now.  And pursuant to the
18    CARES Act and I believe the request of the
19    defendant, everyone has agreed for this matter to
20    proceed by video conference.
21              So, as a result of the defendant pleading
22    guilty, the Court directed the Probation Office to
23    prepare a presentence report.  That was done.
24    Copies were made available to everyone, including
25    the defendant.
```

1      Mr. Maliza, have you had a reasonable

2  opportunity to read this report and review it with

3  your client?

4      MR. MALIZA:  I have, Your Honor.

5      THE COURT:  And how did you do that with

6  your client?  Was that in person or by video or

7  what?

8      MR. MALIZA:  I know the most recent

9  conversation Mr. Woodfork and I had was on the

10 phone.

11      Mr. Woodfork, did we have a video talk

12 about this?  I know we talked about it on the phone

13 in the last week.

14      DEFENDANT WOODFORK:  No, sir.  No video.

15      MR. MALIZA:  So it was on the phone, Your

16 Honor.

17      THE COURT:  But you have had an opportunity

18 to thoroughly discuss it?

19      MR. MALIZA:  We have.

20      THE COURT:  Based on that reading and

21 review, is there anything in the report you feel is

22 inaccurate or incomplete that you wish to challenge?

23      MR. MALIZA:  Your Honor, we submitted

24 several objections, most of which were resolved by

25 the probation office in consultation with the

USA v. EDWARD WOODFORK, No. 18-20060 -- Sentencing (12/02/2020)    4

```
 1   prosecution.

 2            There were two areas, though, we did want

 3   to highlight.  The first was a reference to Mr.

 4   Woodfork saying ....

 5                    (Brief pause in proceedings; lost

 6                    audio/video connection.)

 7            THE COURT:  Okay.  I'm back.  Can everyone

 8   hear me?

 9                    (Simultaneous affirmative responses.)

10            THE COURT:  Okay.  Mr. Maliza, you were

11   about to tell us about two issues.

12            MR. MALIZA:  Yes, Your Honor.  The first is

13   in paragraph 21.  Mr. Woodfork wants to clarify in

14   that paragraph that he himself did not use the words

15   "Marcus McKinney."  He referenced someone named

16   "Slim," but any connection between someone with that

17   name and Mr. McKinney would have been done by law

18   enforcement.

19            THE COURT:  Okay.  Is there any dispute

20   about that, Mr. Freres?

21            MR. FRERES:  I don't dispute what he said.

22   We know who Slim is, --

23            THE COURT:  Okay.

24            MR. FRERES:  -- and Mr. McKinney confirmed

25   he was dealing methamphetamine to Mr. Woodfork, so
```

1    that's the right person.

2            THE COURT:  That's noted.

3            MR. MALIZA:  Thank you, Your Honor.

4            And in paragraph 16, it references an

5    unknown date for a controlled buy at 1220 North

6    Franklin.  I believe this was referenced in the

7    United States's response to Mr. Woodfork's motion

8    for a *Franks* hearing, but Mr. Woodfork can't concur

9    with this without seeing the evidence.  For that

10   reason, we have to object to that in that he doesn't

11   have sufficient evidence.  He doesn't know what date

12   they're talking about.

13           THE COURT:  Can I assume that there was a

14   police report that reported this?

15           MR. MALIZA:  I don't recall seeing that

16   report, Your Honor; but it wasn't charged conduct,

17   and I don't even believe it's relevant conduct.  I

18   became aware of it in this way, as I said, I think

19   to the government's response for a motion for a

20   *Franks* hearing.

21           You can correct me if I'm wrong, Mr.

22   Freres.

23           THE COURT:  Well, I understand and I'm

24   certainly not going to rely on this material in

25   imposing sentence.

```
 1                   MR. MALIZA:  Okay.

 2                   THE COURT:  I understand his point, but I

 3       don't think I need to resolve it any more than that.

 4       Okay?

 5                   MR. MALIZA:  Yes, Your Honor.

 6                   And other than that, we had no outstanding

 7       objections, Your Honor.

 8                   THE COURT:  All right.  Thank you.

 9                   Mr. Woodfork, have you had a reasonable

10       opportunity to read this report and review it with

11       your attorney?

12                   DEFENDANT WOODFORK:  Yes, sir.

13                   THE COURT:  Based on your reading and

14       review, other than matters that Mr. Maliza has

15       already brought to my attention, is there anything

16       else in the report you feel is inaccurate or

17       incomplete that you wish to challenge?

18                   DEFENDANT WOODFORK:  No, sir.  It's fine,

19       sir.

20                   THE COURT:  You understand you have the

21       opportunity to present evidence in mitigation here

22       today?  You also have the right to make a statement

23       to the Court on your own behalf before I impose

24       sentence.

25                   Do you understand?
```

```
 1              DEFENDANT WOODFORK:  Yes, sir.

 2              THE COURT:  Thank you.

 3              Mr. Freres, are you aware of anything in

 4  the report that is inaccurate?

 5              MR. FRERES:  No, Your Honor, I'm not.

 6              THE COURT:  Do you have any additional

 7  evidence to present?

 8              MR. FRERES:  No, sir.

 9              THE COURT:  All right.  Mr. Maliza, I would

10  note that I -- you filed, I think, four letters in

11  support.  I have read those, and they will be made

12  part of the record in the case.

13              Do you have any additional evidence to

14  present?

15              MR. MALIZA:  No additional evidence.

16  Although, Your Honor, I did forget at the outset:

17  Would it be beneficial to, for you briefly to

18  confirm with Mr. Woodfork that he consents to doing

19  this via video for imposing sentence?

20              THE COURT:  Yes, absolutely.

21              Mr. Woodfork, I indicated earlier that you

22  wanted this proceeding to take place by video rather

23  than waiting for it to take place later face to

24  face.  Is that correct?

25              DEFENDANT WOODFORK:  Yes, Your Honor.
```

```
 1              THE COURT:  So you do consent to this
 2    sentencing hearing taking place by video rather than
 3    in person?
 4              DEFENDANT WOODFORK:  Yes, Your Honor.
 5              THE COURT:  Okay, thank you.
 6              Okay, so you have nothing -- no other
 7    evidence, Mr. Maliza?
 8              MR. MALIZA:  No, Your Honor.
 9              THE COURT:  So the, the sentencing profile
10    here:  It's a total offense level of 29, criminal
11    history category IV.
12              Custody range on Count 1 is 121 to 151.
13    There's a ten-year mandatory minimum; on Count 2,
14    120 months.
15              Supervised release:  At least five years on
16    Count 1.  On Count 2, it's one to three years.
17              A fine range of 30,000 to $10 million.
18              And there's no restitution.
19              A special assessment of $200.
20              Mr. Freres, do you have a statement to make
21    regarding sentence?
22              MR. FRERES:  Yes, Your Honor.
23              Your Honor, I, I don't know -- I guess the
24    best way I'll characterize this is to say that my
25    general practice in sentencing is when somebody has
```

 1  accepted responsibility for their actions, they
 2  plead guilty, and they save us the time of a trial,
 3  I typically recommend the low end of the guideline
 4  range.
 5          And I think that -- I don't object to that
 6  here as well.  Mr. Woodfork did do those things.
 7  And, ordinarily, I would just leave it at that.
 8  Essentially, the minimum is the low end of the
 9  guideline range.  However, I do feel obliged to make
10  a couple of points because I can guess where this is
11  going to go.
12          Number one, this was a close call on
13  whether or not to charge a 924(c) count.  I elected
14  not to, and I think that's the right call.  But it
15  doesn't change the fact that when we have 924(c)
16  convictions those are considered crimes of violence
17  because of the gun's potential use in the gun trade.
18  Just because Mr. Woodfork wasn't charged with a
19  924(c) doesn't mean that him possessing a gun here
20  while possessing also a significant amount of
21  methamphetamine doesn't mean this wasn't a dangerous
22  crime.  It very much was.
23          Mr. Woodfork has a history of violence; and
24  even if the mandatory minimum were not there, I
25  think 120 months is the sweet spot, obviously, for

 1   this case.  And I say that because I suspect

 2   strongly, as many defendants are doing right now,

 3   that Mr. Woodfork is going to turn around and file a

 4   compassionate release motion here in short order

 5   because he has diabetes and he's obese.

 6          Well, if and when that time comes, I don't

 7   think a record just saying *hey, look, he got the*

 8   *minimum sentence* is sufficient because I do think

 9   that Mr. Woodfork is a significant danger to the

10   community, and I think this sentence is well

11   deserved.

12          I would note in particular that, you know,

13   while the First Step Act has changed a lot of things

14   for a lot of defendants, it actually would have had

15   the reverse effect on Mr. Woodfork.  If he had

16   committed his crime six months later, he would be

17   looking at a 15-year sentence.

18          When Congress shifted things with drug

19   sentencing on the First Step Act, they lowered

20   minimums for pretty much everybody except for people

21   with a history of violent crime; and Mr. Woodfork's

22   robbery was a violent crime for which he was

23   released within 15 years of the date of this

24   offense, which means it would today be an

25   appropriate predicate to enhance his sentence

1  obviously.  Due to the ex post facto law, I think

2  it's appropriately not applied here.

3          But it doesn't change the fact that we have

4  Congress who is lowering sentences across the board

5  felt obliged to do something that would have raised

6  this particular defendant's sentence.

7          That, to me, speaks volumes about the

8  necessity of the sentence this Court's going to

9  impose and why I think 120 months is appropriate and

10 why any future compassionate release motion should

11 be categorically denied on that ground.

12          So that's a long-winded way to respond to

13 something I think is coming; but, nevertheless, Your

14 Honor, I do think the 120-month low end of the

15 sentence is appropriate here.

16          THE COURT:  All right, thank you.

17          Mr. Maliza.

18          MR. MALIZA:  Thank you, Your Honor.  And

19 may it please the Court, Mr. Freres.

20          Your Honor, I agree with the recommendation

21 to a 120-month sentence.  That is, essentially, the

22 low end of the guideline.  It's one month under, but

23 it is -- and Mr. Woodfork would agree -- it is a

24 fair sentence given the, his acknowledgment that

25 this is a serious case and he's taking it seriously.

1  A ten-year sentence is, by any estimation, a very

2  serious, long time to spend in prison.

3          I would begin by just noting, responding

4  briefly to the comment about the new recidivist

5  enhancements in the First Step Act.  I've read a lot

6  of the cases about recidivist enhancements, as I'm

7  sure we all have; and one of the things courts have

8  emphasized is Congress applies specific enhancements

9  to dissuade people by putting them on notice of the

10  severity of the sentences if they commit a crime

11  with the subject predicates.

12          The reason that the ex post facto law would

13  prevent the Court from doing a 15-year minimum in

14  this case is because Mr. Woodfork wouldn't have been

15  on notice.  Obviously, he's aware of what he should

16  and shouldn't do.  But any sort of upward deviation

17  in this case, upward variance in this case, I think,

18  would punish him based on a hypothetical of what he

19  would have been if he had been on different notice.

20          So I do think that the applicable minimum

21  is the appropriate sentence in this case, and it

22  also reflects the Sentencing Commission's --

23  essentially the Sentencing Commission's assessment

24  with the 121-month to 151-month sentence.

25          I spelled out in my sentencing commentary

1  also a bit about how the purity enhancement for

2  methamphetamine has been thrown into some question

3  in recent years, particularly given that I've been

4  in this district for about four years at this point,

5  and I don't, I don't think I've seen one case --

6  maybe I've seen one or two methamphetamine cases --

7  that were not pure methamphetamine.

8        And that just goes to kind of show that

9  this is a run-of-the-mill, normal case today.  It's

10  not a special case.  Everybody has this purity.

11  It's -- that's just the way that methamphetamine is

12  distributed today, unfortunately.

13        Given that fact, and given that this,

14  without the purity enhancement, Mr. Woodfork's

15  guidelines would actually be below the mandatory

16  minimum, I do think that the mandatory minimum is

17  applicable here and would be an appropriate

18  sentence.

19        I have not spoken with Mr. Woodfork about

20  a, an impending compassionate release motion.

21  Indeed, the Court will note in reviewing the docket

22  that that was a conditional plea of guilty, so he's

23  probably got several months at the very least before

24  any compassionate release motion can be filed since

25  that can't be filed while there is a pending appeal.

1          Given all that, Your Honor, it's likely

2   that COVID would be at least on its way to being

3   solved through vaccine and treatments long before

4   Mr. Woodfork would file a compassionate release

5   motion.  So I'd urge the Court to just address that

6   if and when it came down the line and focus on

7   today's 3553(a) factors.

8          Mr. Woodfork acknowledges the seriousness

9   of some of his priors, although I'd note that the

10  robbery happened in 2006.  Mr. Freres is correct

11  it's within the 15 years but just barely, right?

12  That's 13, 14 years ago.  It occurred when Mr.

13  Woodfork was 19 years old.  I'm sure the Court is

14  aware of research that suggests that brains are

15  not -- human brains are not fully developed until

16  25 years old, so people are making bad decisions.

17          I think there's a case called *Brown* where

18  the Seventh Circuit has even said you can take into

19  account the age at which somebody committed their

20  prior, their prior felonies.

21          His other issues, his other convictions --

22  the weapon charge, the battery charge -- again,

23  those were 2007.  He was 20 years old.

24          There was a 2014 arrest, but it wasn't

25  charged, and I think there's obviously a reason for

 1    that.  If evidence should come forward that might

 2    later necessitate addressing that, I think the State

 3    has every reason and incentive to pursue that.  But

 4    the 2014 arrest, which I'm sure the Court noticed in

 5    reviewing the PSR, it was an arrest that ultimately

 6    led to no charges.

 7            So what we have is a person who makes

 8    serious mistakes when he was in his teens and when

 9    he was 20.  He seems to have certainly made better

10    decisions, although this is a regrettable instance

11    in 2018 -- I believe in May of 2018 -- when he

12    actually committed the instant offense.

13            All that said, Your Honor, this case is

14    very run of the mill.  It's -- the mandatory minimum

15    matches up with the applicable guidelines, and we

16    would argue that the mandatory minimum is

17    appropriate in this case and ask that the Court

18    impose a sentence of 120 months.

19            And unless the Court has any questions, I

20    have nothing further, Your Honor.

21            THE COURT:  All right, thank you.

22            Mr. Woodfork, is there anything you would

23    like to say to the Court on your own before I impose

24    sentence?

25            DEFENDANT WOODFORK:  Yes, Your Honor.

USA v. EDWARD WOODFORK, No. 18-20060 -- Sentencing (12/02/2020)    16

```
 1              THE COURT:  Please go ahead.
 2              DEFENDANT WOODFORK:  I would like to
 3    apologize to my children, family, and friends for
 4    letting them down and putting them through this
 5    because this is not who I am as a person.  And if
 6    you have taken the time to read the letters, it
 7    would show reflecting on the type of individual that
 8    I am.
 9              My whole life people -- people who don't
10    know me have created this big bad persona of me, and
11    that is just not the case.  I'm not perfect.  No one
12    is.  I am simply a man who had fallen on hard times
13    who made some very poor decisions and choices which
14    led me to using drugs.  However I embrace the total
15    heading down the wrong road and my life starting to
16    spiral out of control so that thankfully I had time
17    to reflect on the impact on my children and their
18    lives, and this has been a true eye opener for me
19    and shown that I need to make drastic changes in my
20    life and get it together for my children and for me.
21    And as being a father, this is just -- the greatest
22    punishment is being away from my children and not
23    being able to protect them.
24              So to say I've learned my lesson is a huge
25    understatement.  I take full responsibility for my
```

 1    actions, you know.  And upon release, I have a

 2    couple of good friends who have a couple of job

 3    opportunities for me, and I plan to get my life

 4    together, enroll in a college, and become a

 5    motivational speaker, you know, to the youth and to

 6    encourage them not to make the same mistakes that I

 7    have made in my life.

 8         And I want to apologize to this Court, you

 9    know, for just being a screw-up in life and, you

10    know, just for this long process that we have been

11    through.

12         THE COURT:  All right.  Thank you, sir.

13         The Court adopts the factual findings and

14    guideline application as contained in the

15    presentence report.

16         Looking first at the offense conduct --

17    let's see, paragraph 17, it talks about a search

18    warrant being served at 1220 North Franklin Street.

19    You were there.  You said you would take ownership

20    of whatever was found.

21         They found 55 grams of ice with 96 percent

22    purity, drug packaging, a digital scale, a loaded

23    semi-automatic pistol under the mattress in a

24    basement bedroom where the drugs were located, some

25    cannabis.

 1          And the gun had been reported stolen in May

 2    of 2018.

 3          You jumped around a little bit -- well,

 4    maybe not.  You claimed you didn't live at the

 5    residence, but you admitted staying there

 6    frequently, spending the night.  You said you only

 7    knew about the marijuana, claimed the marijuana was

 8    for your use.  You initially said you didn't know

 9    about the methamphetamine but later admitted that

10    you had taken it from someone.  You admitted to both

11    using and selling methamphetamine.

12          You were -- it looks like you were in the

13    business of selling, buying and selling.

14          So as indicated, this is a serious offense,

15    not only because of the amount of drugs involved but

16    the clear and present presence of the gun and its

17    relation to the, to the drugs, obviously creating an

18    inference that the gun is there to protect the

19    drugs.  So, very serious.

20          Concerning your background, these things

21    have been mentioned, but you have a robbery in 2006

22    that started out with probation and ended up with

23    five years sentenced to IDOC.

24          Possession of a weapon by a felon, seven

25    years in IDOC.

USA v. EDWARD WOODFORK, No. 18-20060 -- Sentencing (12/02/2020)    19

```
 1              A battery, 364 days.
 2              A criminal trespass.
 3              Criminal trespass to a vehicle.
 4              As noted, most, I guess -- let me see --
 5    the latest serious conviction was, it looks like in,
 6    back in '13 or '14.
 7              In terms of your background, you have some
 8    contact with your mother.  Your parents weren't
 9    married but raised you until you were 13.  You lived
10    with your father until your father passed.
11              You say you had a good childhood; always
12    had everything you needed.  Your parents were both
13    good parents.
14              You do have some sisters and maternal
15    brothers.
16              You've never been married.  You have two
17    children, I believe, ages 10 and 4; is that right?
18              DEFENDANT WOODFORK:  They're 11 and 5 now,
19    sir.
20              THE COURT:  Oh.
21              DEFENDANT WOODFORK:  Their, both their
22    birthdays just passed.
23              THE COURT:  Okay, fine.
24              You do have Type II diabetes and
25    hypertension, and apparently you're overweight also.
```

1          No history of mental or emotional health

2     problems.

3          You have some drug abuse history; used meth

4     on a daily basis when you were, until you were

5     arrested.

6          Back in 2008, you did complete a substance

7     abuse treatment program in IDOC.

8          I'm happy to see you earned your GED while

9     incarcerated in IDOC.

10          You do have some employment history.

11          Your financial condition is very much in

12     the negative column.

13          The sentence should, imposed should reflect

14     the seriousness of the offense, promote respect for

15     the law, provide just punishment, reflect the

16     guidelines, your physical condition, and anything

17     else that maybe should be addressed while you're in

18     prison.

19          I think it's fair to characterize this

20     mandatory minimum as well deserved under all the

21     circumstances.  That's not always true, but I think

22     it's true here.

23          The letters of support suggest that there

24     is a good side to you; that you have some parts to

25     your personality that are not criminal and helpful

```
 1   and caused people to respect you and care for you.
 2           Your statement that you weren't perfect is
 3   certainly a correct statement.
 4           I was happy to see it appears, I think, in
 5   one of the letters of support that one of your
 6   friends is, is willing and prepared to give you a
 7   job opportunity when you come out.  I certainly hope
 8   that pans out.  It might be a way for you to really
 9   get started in a different direction.
10           I note Mr. Freres's comments about what
11   might come later.  I'm sure if there is a
12   compassionate release filed that the government will
13   make the same arguments that they've made here
14   today, and I'll -- I'm not going to cross that
15   bridge before I get there.
16           So, the bottom line is that I think the
17   mandatory minimum, which is 120, is the proper
18   sentence in this case.  It's the sentence that's
19   sufficient but not greater than necessary to address
20   all of the sentencing factors.
21           Prior to today, I believe both sides were
22   provided with copies of the probation officer's
23   recommendation for conditions of supervised release.
24           Mr. Maliza, did you have an opportunity to
25   carefully go over those with your client?
```

1           MR. MALIZA:  Yes, Your Honor.  We discussed

2    them when we discussed the -- they were included in

3    the Presentence Investigation Report, so we

4    discussed them at that time.

5           THE COURT:  Okay.  And do you waive reading

6    of the specific terms?

7           MR. MALIZA:  Yes, Your Honor, we do.

8           THE COURT:  Is that correct, sir?  Have you

9    gone over these with your attorney, Mr. Woodfork, --

10          DEFENDANT WOODFORK:  Yes, Your Honor.

11          THE COURT:  -- and you understand -- okay,

12   very good.

13          Well, I've looked at them.  Most of them

14   are standard conditions, but I think they're all

15   appropriate.  They're all necessary so that

16   Probation will have the tools they need to hopefully

17   result in your successful completion of supervision.

18          So pursuant to the Sentencing Reform Act of

19   1984, the defendant is hereby committed to the

20   custody of the Bureau of Prisons for a period of

21   120 months.  That term will consist of 120 months on

22   Count 1 and 120 months on Count 2, to be served

23   concurrently.

24          The Court finds that you do not have the

25   ability to pay a fine, and no fine is imposed.

1          Following your release from custody, you

2     shall serve a five-year term of supervision.  That

3     term will consist of five years on Count 1 and

4     three years on Count 2, to be served concurrently.

5          While on supervision, you shall not commit

6     another federal, state, or local crime.

7          You shall not possess a controlled

8     substance.

9          You shall submit to one drug test within

10    15 days of release and at least two drug tests

11    thereafter as directed.

12         You shall cooperate in the collection of

13    DNA as directed.

14         You shall comply with the conditions of

15    supervision that we've discussed that you've

16    waived -- that you've agreed to and you've waived

17    reading of them word for word.

18         COURTROOM DEPUTY:  Judge, this is Jessi.

19         THE COURT:  Yes?

20         COURTROOM DEPUTY:  I just want to make the

21    record clear that you're sentencing him to 121

22    months on Counts 1s and 2s, with the contingent of

23    the government dismissing the original indictment.

24         THE COURT:  All right.  Does the

25    government -- yes.  Is the government dismissing the

```
 1    original indictment?
 2             MR. FRERES:  Yes, Your Honor.  This is the
 3    superseding indictment that we're proceeding on.
 4             THE COURT:  Okay, great.  So ordered.
 5             There's also a special assessment of $200
 6    imposed and payable immediately.
 7             Concerning a recommendation for the Bureau
 8    of Prisons, I would ask Probation to make a strong
 9    point with the Bureau of Prisons that he does have
10    diabetes, and he's overweight, and to please take
11    that into account when they decide where to assign
12    him.
13             Does your client want to be as close to
14    Danville as possible?
15             MR. MALIZA:  Yes, Your Honor.  We discussed
16    it -- or he discussed it with my colleague; I'm not
17    sure.  I know Mr. Woodfork a while ago has discussed
18    Pekin as the preferred recommendation, though I
19    don't know if that's necess-- I don't recall
20    anything more recent, unless Mr. Woodfork has a
21    correction.
22             THE COURT:  All right.  Mr. Woodfork, do
23    you still want me to recommend Pekin?
24             DEFENDANT WOODFORK:  Yes, Your Honor.
25             THE COURT:  Okay.  I think the virus is not
```

USA v. EDWARD WOODFORK, No. 18-20060 -- Sentencing (12/02/2020)    25

1  bad there, if I'm not mistaken.

2          MR. MALIZA:  It's -- Your Honor, if I may,

3  it's been up and down.

4          THE COURT:  Oh.

5          MR. MALIZA:  It's been good for a long

6  time, and then they had a spike.  It's back down.  A

7  colleague of mine -- and I'm sorry to delay the

8  proceedings.  A colleague of mine did say that it's

9  about a 15,000 -- there's a 15,000-person backlog of

10  actual designations from BOP now, which means it

11  will be some time until he's actually --

12          THE COURT:  Okay.

13          MR. MALIZA:  -- at Pekin.

14          THE COURT:  I will also recommend that you

15  be allowed to participate in a residential drug

16  abuse program and maximize your exposure to

17  educational and vocational opportunities.

18          Was there a waiver in this case?

19          MR. MALIZA:  No, Your Honor.

20          THE COURT:  Okay.  So, Mr. Woodfork, you do

21  have the right to file an appeal in this case.  If

22  it is your wish to appeal, I notify you that any

23  Notice of Appeal must be filed with the Clerk of the

24  Court within 14 days of today's date.

25          As your attorney, Mr. Maliza has an

1    absolute responsibility to file that notice for you

2    if that is your wish.

3            Do you understand, sir?

4            DEFENDANT WOODFORK:  Yes, Your Honor.

5            THE COURT:  Okay.  Anything else, counsel?

6            MR. FRERES:  Not from the government, Your

7    Honor.

8            MR. MALIZA:  Nothing from the defense, Your

9    Honor.

10           THE COURT:  All right.  Thank you.

11           Good luck.

12           DEFENDANT WOODFORK:  Thank you, Judge.  You

13   have a great day.

14                 (Hearing concludes, 3:11 p.m.)

15               * * * * * * * * * *

16               REPORTER'S CERTIFICATE

17           I, LISA KNIGHT COSIMINI, RMR-CRR, hereby

18   certify that the foregoing is a correct transcript

19   from the record of proceedings in the above-entitled

20   matter.

21           Dated this 4th day of January, 2021.

22

23           _____s/Lisa Knight Cosimini_____
                  Lisa Knight Cosimini, RMR-CRR
24                Illinois License # 084-002998

25